Esmeregilda R. PENA et al., Appellants,

v.

George H. COATES et al., Appellees.

No. 14159.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 20, 1963.

Ewers, Toothaker, Ewers, Byfield, & Abbott, McAllen, for appellants.

Head & James, Corpus Christi, Pope & Pope, Rio Grande City, for appellees.

MURRAY, Chief Justice.

This suit was instituted in the District Court of Starr County, Texas, by Esmeregilda R. Pena. and Maria Pena Guerra, joined by her husband, Manuel A. Guerra, against George H. Coates and M. M. Conn, seeking termination of a certain mineral deed, whereby Coates became the owner of a ¼ mineral interest in and under about seventy acres of land situated in Starr County, Texas, and described generally as Shares Nos. 11, 17 and 22 of the Partition of Santa Cruz Grant.

The trial court granted defendants' motion for a summary judgment and rendered judgment that plaintiffs take nothing as against defendants, George H. Coates and M. M. Conn, from which summary judgment Esmeregilda R. Pena and Maria Pena Guerra, joined by her husband, Manuel A. Guerra, have prosecuted this appeal.

The effect of the court's action was to refuse to declare as terminated the mineral deed for the failure to discover oil, gas and other minerals upon the above described seventy acres of land before May 21, 1957.

It is proper to here state the facts. On May 21, 1937, Cipriano Pena and his wife, Esmeregilda R. de Pena, executed a mineral deed to Tom Vessels, Jr., to one-half of the minerals in or under the seventy acres heretofore described. Tom Vessels, Jr., conveyed one-fourth of the minerals to George H. Coates. The original mineral deed provided that it would terminate unless oil, gas or minerals were *discovered* on the seventy acres before May 21, 1957.

Cipriano Pena died and his wife, Esmeregilda R. de Pena, and his daughter, Maria Pena Guerra, appellants herein, became the owners of one-half of the minerals in the seventy acres not theretofore conveyed to Vessels.

On April 24, 1956, appellants executed a lease to C. G. Glasscock-Tidelands Oil Company, covering their one-half interest in the minerals. On May 1, 1956, appellee Coates executed a lease to the same lessee, covering his one-fourth mineral interest. Both of these leases authorized the pooling of their minerals into units not to exceed 640 acres for the production of gas. Subsequently the Coates gas unit was formed, comprising 389.10 acres, including the leases executed by appellants and appellee Coates.

Gas was discovered on July 15, 1956, on a fourteen-acre tract within the unit, and on August 6, 1956, gas was discovered on a forty-six acre tract included within the Canales Gas Unit.

On April 10, 1957, appellants executed a gas division order, and on April 12, 1957, appellee Coates executed the same division order. The division order acknowledges the existence of the Canales Unit, and authorizes payment of shut-in gas royalties for the purpose of perpetuating all of the named leases in force. The division order further reflects payment of shut-in gas royalties covering appellants' lease to April 1, 1957, and covering appellee Coates' lease to July 20, 1958.

Gas Purchase Contract was executed by C. G. Glasscock-Tidelands Oil Company, dated June 26, 1956, providing for take or pay gas commencing January 1, 1958.

Appellants executed a second lease to C. G. Glasscock-Tidelands Oil Company on November 28, 1958, authorizing pooling of their lands and providing for additional royalties. A division order effective January 1, 1958, was executed by appellants, acknowledging the existence of the Canales Unit, and the inclusion of their lands within such unit. Appellants recognized the mineral interest owned by appellee Coates as being in force and effect at the time of the execution of the lease.

On May 21, 1957, no gas was actually being produced from either of the wells in the Canales Unit. However, gas was discovered in one well in paying quantities on the Canales Unit on July 15, 1956, and in a second well on August 6, 1956. Coastal Transmission Corporation commenced the purchase of advance gas on January 1, 1958, and the gas pipe line was completed and gas commenced to be run into the gas line during the month of May, 1959, and has continued thereafter.

■ It is clear that gas, which proved to be in paying quantities, was discovered prior to the termination date of the mineral deed, through the pooling of the mineral interests and the discovery of gas within the Canales Unit. All that was required by the terms of the mineral deed was that gas be discovered. Discovery does not mean production in paying quantities. Texas Pacific Coal & Oil Co. v. Bratton, Tex.Civ.App., 239 S.W. 688.

■ It is well settled that where pooling has legally occurred, which involves several parcels of land, discovery of gas on one of the parcels is regarded as discovery on all of the parcels. Spradley v. Finley, 157 Tex. 260, 302 S.W.2d 409; Southland Royalty Company v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914; Williamson v. Federal Land Bank of Houston, Tex.Civ.App., 326 S.W.2d 560. The cases of Holland v. Vela De Pena, Tex.Civ. App., 343 S.W.2d 750 and Archer County v. Webb, 161 Tex. 210, 338 S.W.2d 435, are not applicable to the matters here involved, in that there production was required.

The appellee M. M. Conn was made a party to this suit because he was the operator of the lease and for no other reason.

The trial court did not err in granting appellees' motion for a summary judgment decreeing that Esmeregilda R. Pena and Maria Pena Guerra and her husband, Manuel A. Guerra, take nothing as against George H. Coates and M. M. Conn, and that such appellees go hence without day and with their costs.

In view of the above holding, we find it unnecessary to pass upon the question of estoppel.

The judgment of the trial court is affirmed.